IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RASHI KEYON MINES, #254 577, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:16-CV-969-RAH |
| ) | [WO] |
| BRANDON D. MACK, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Rashi Mines ["Mines"] brings this 42 U.S.C. §1983 action against Lieutenant Brandon Mack ["Mack"] and Correctional Officers Kaylon Scott ["Scott"] and Darrell Johnson ["Johnson"]. Mines alleges Defendants violated his constitutional rights when they subjected him to excessive force at the Kilby Correctional Facility on September 19, 2016. According to the complaint, Mines alleges Mack slapped him in the face in A Dorm while he was handcuffed. Mines alleges he was then "taken [] outside of A-Dorm with another inmate" and Mack removed his handcuffs. Mines claims Defendants Scott and Johnson and other unnamed officers then assaulted him by punching and kicking him. Mines received disciplinary infractions stemming from the September 19 incident and contends he was found guilty because of the testimony of the officers. He seeks expungement of the disciplinaries, damages of $100,000, and requests Defendants be fined and fired. Doc. 1.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Mines' claims for relief and denying his allegations. Doc. 6. Upon receipt of Defendants' special report, the court entered an order which provided Mines an opportunity to file a response to Defendants' report. Doc. 8. This order advised Mines his response should be supported by

affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 8 at 1–2. The order further cautioned Mines that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as motions for summary judgment and (2) after considering any response as allowed by this order, rule on the motion . . . in accordance with law." Doc. 8 at 2. Mines responded to Defendants' report, *see* Doc. 10, but his response does not demonstrate there is any genuine issue of material fact. The court will treat Defendants' special report as a motion for summary judgment, and concludes this motion is due to be resolved in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact

or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Mines to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ*., 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . .

. . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein,* 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Mines' *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II.  DISCUSSION

**A.     Sovereign Immunity**

To the extent Mines seeks monetary damages from Defendants in their official capacities, they are entitled to sovereign immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Selensky*,

619 F. App'x at 849; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

B.     **Qualified Immunity**

In response to Mines' allegations, Defendants argue they are entitled to qualified immunity in their individual capacities. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The records shows Defendants were acting within the course and scope of their discretionary authority when the incident about which Mines complains occurred. Mines must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have

6

placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). Clearly established law means: (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id*. at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). A *per se* rule that qualified immunity is inappropriate on summary judgment where a plaintiff has not presented evidence that could sustain an Eighth Amendment excessive force claim would eviscerate the plaintiff's burden of proof to show a constitutional violation once a defendant evokes qualified immunity and turn Rule 56 on its head.[1] *See Hope*, 536 U.S. at 736, and *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (a plaintiff bears the burden to show that a constitutional violation occurred to defeat a defendant's assertion of qualified immunity); *see also Celotex*, 477 U.S. at 323-24; Fed. R. Civ. P. 56; *Skelly v. Okaloosa County Bd. of County Com'rs*, 456 F. App'x 845, 847-48 (11th Cir. 2012) (engaging in a qualified

---

[1] Qualified immunity is not available on a motion to dismiss where a plaintiff alleges that a defendant used excessive force in violation of the Eighth Amendment. When ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plaintiff's burden of proof in a case where a defendant raises the defense of qualified immunity, therefore, depends on the type of motion pending before the court. Here, the case is pending on Defendants' motion for summary judgment. Accordingly, where evidence is considered by the court, it is construed in the light most favorable to Mines. However, to avoid qualified immunity, Mines' evidence must support an Eighth Amendment excessive force claim.

immunity analysis on Eighth and Fourteenth Amendment excessive force claims and distinguishing between a plaintiff's burden to show a constitutional violation in the first instance from the fact that, once a violation is demonstrated, the Eighth Amendment right is always clearly established).

The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (quotation marks and citation omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

**C.     Excessive Force**

Claims of excessive force by jail officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. 503 U.S. at 8 (internal quotations omitted). Regarding the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force ... are only imperfectly correlated, and it is the latter that

ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.' " *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The core inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39 (2010) *(*per curiam) (citation omitted).

Whether force was applied maliciously and sadistically to cause harm requires analysis of several factors, including: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam). While a lack of serious injury is relevant to the inquiry, "[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts." *Wilkin*, 559 U.S. at 38. *See Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force, without more, will not support a claim for excessive force...."); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force."); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (holding application of *de minimis* force, without more, presents no claim cognizable under the Eighth Amendment).

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Generally, correctional officers are authorized to use force when a prisoner fails to comply with an order. "Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (citation omitted). Further, the Eleventh Circuit has long recognized that "[p]epper spray is an accepted non-lethal means of controlling unruly inmates." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Scroggins v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009) (holding that "use of one burst of oleoresin capsicum (O.C.) spray against [the inmate-plaintiff after his failure to obey a direct order and engaging in a scuffle with guards] was not excessive force."). Pepper spray "is designed to be disabling without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation. Therefore, a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Pearson*, 665 F. App'x at 864 (internal quotation marks and citations omitted).

As the moving party, Defendants bear the initial burden on summary judgment of "identifying those portions of 'the pleadings, ... admissions on file, together with the affidavits, ... which [they] believe[s] demonstrate the absence of a genuine issue of material fact.' " *Celotex*, 477 U.S. at 323. To support their motion for summary judgment, Defendants have produced personal affidavits, prison incident reports, use of force investigative reports, a duty post log, a body chart, and photographic evidence.

Based on Defendants' dispositive motion and the evidentiary material filed in support of the motion, the following facts are undisputed or, if disputed, are taken in a light most favorable to Mines. On September 19, 2016, Scott—who was assigned to A Dorm—observed Mines attempting to exit A Dorm for breakfast. Scott told Mines he could not leave the dorm because the quarantine dorms were eating breakfast. Mines became verbally aggressive and refused Scott's orders to move away from A Dorm gate. Scott then temporarily left A Dorm. On his return to A Dorm, another correctional officer advised Scott that he had observed Mines pull what appeared to be a knife from his pants pocket and place it back. Scott entered A Dorm and noticed Mines pacing back and forth. Mines again became verbally abusive towards Scott and threatened to assault him.[2] Scott ordered Mines to desist and turn around to be handcuffed. Mines failed to comply and ran from Scott. As Mines was running, Scott observed him throw a prison-made knife to the ground. Scott radioed Mack to report to A Dorm and again gave Mines a verbal order to be handcuffed. Instead of complying with the order, Mines turned and swung at Scott. In response, Scott pulled his Sabre Red spray and sprayed a short burst to Mines' facial area and then ordered him to lay down and be handcuffed. Mines complied. Doc. 6-2, Doc. 6-4 at 1–3, 5–7.

Mack responded to A Dorm at approximately 5:20 a.m. after receiving a radio call for assistance from Scott that he report to A Dorm. When Mack arrived at the dorm, he observed Mines lying face down on the floor with his hands cuffed behind him. After Scott apprised Mack of his interaction with Mines, the two officers assisted Mines to a standing position. At approximately 5:30 a.m. Mack and Officer Kenneth Kibble escorted Mines to the medical unit for a medical examination and decontamination. Doc. 6-1, Doc. 6-4 at 1–3, 5–7, Doc. 6-5.

---

[2] According to the incident report, Mines stated to Scott "[c]ome on in here, I'm going to wet your ass up bitch." Doc. 6-4 at 1.

At the time of the incident about which Mines complains, Johnson was conducting sick call at Gate5/L Block. Johnson heard a commotion emanating from A & B Dorm and observed an officer escorting a handcuffed inmate to the medical unit for examination and decontamination. Johnson states he was not in the area of A Dorm at the time of the incident about which Mines complains. Doc. 6-3.

Mines' medical record reflects that he received a body chart on September 19, 2016, at 5:30 a.m. following the incident in A Dorm. He advised medical personnel that "they jumped me & then sprayed me." Medical staff's examination of Mines reflected he had superficial abrasions on his left temple, his left upper back, and his left flank. The body chart does not otherwise denote any other complaints or injuries.[3] Doc. 6-5.

Viewing the evidence of record in a light most favorable to Mines, Defendants used a constitutionally permissible use of force to maintain order, prison security, and safety. In considering the application of the *Whitley* factors to this case, the undersigned recognizes at the outset that there is no dispute that Mines refused Scott's repeated orders to be handcuffed, that he made threatening statements to Scott, that he exhibited belligerent, insubordinate, and combative conduct, that he had been observed with a prison-made knife during part of incident, and that he attempted to assault Scott. *See* Docs. 6-2, 6-3, 6-4, 6-5, 6-6. Mines does not dispute these facts. Rather, in response to Defendants' evidence, he claims Mack and other officers assaulted him. Doc. 10 at 1. Although Defendants deny any use of force against Mines other than deploying a shot of pepper spray after his attempt to physically assault Scott, the court must accept Mines' statement as evidence to be considered on a motion for summary judgment. *See Sears v. Roberts,*

---

[3] Defendants' evidence also includes photographs of Mines. Doc. 6-6. The date and time on the photographs indicate they were taken September 18, 2016, at approximately 6:00 p.m. Because of the discrepancy regarding the date and time of the actual incident and the date/time stamp reflected on the photographs, the court has not considered the photographic evidence in reaching its determination.

12

922 F.3d 1199, 1206 (11th Cir. 2019). Thus, assuming Defendants used force on Mines as he claims, the undersigned concludes that an inmate's failure to follow orders from correctional officers justifies the use of some force. *Miles v. Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018) (*citing Bennett*, 898 F.2d at 1533) (observing "[t]he need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance").

The court next considers whether the need to ensure Mines' compliance with Scott's orders coupled with his belligerent behavior and attempt to physically assault the guard justified the amount of force used. *Miles,* 757 F. App'x at 830.

> The second *Whitley* factor, the relationship between the need for force and the amount of force, also weighs against finding a constitutional violation. A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders. *See Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir. 2002) (holding that the use of two five-second bursts of pepper spray was not excessive when used to break up a fight among inmates after they had repeatedly ignored verbal commands to stop); *Jones* [*v. Shields,* 207 F.3d 491, 495–97 (8th Cir. 2000)] (holding that the use of a type of pepper spray called capstun against a prisoner was not a violation of the Eighth Amendment when he had disobeyed a supervisor's order and then questioned a guard's order); *see also Baldwin v. Stalder,* 137 F.3d 836, 838, 841 (5th Cir. 1998) (holding that jail guards did not use excessive force when they sprayed a two-second burst of chemical mace into a bus filled with prisoners who had continued jumping on the seats, spitting at officers outside the bus, rocking the bus, and otherwise causing a disturbance after three times being told to stop); *Williams v. Benjamin,* 77 F.3d 756, 762–63 (4th Cir. 1996) (holding that the use of chemical mace was not excessive when a prisoner disobeyed an order to stop throwing water at a guard and then questioned the guard's second order to remove his arm from his cell's food service window); *cf. Vinyard* [*v. Wilson,* 311 F.3d 1340, 1348 (11th Cir. 2002)] ("Courts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was . . . refusing police requests.").
>
> Nor does the third *Whitley* factor—the extent of [Plaintiff's] injury from the initial use of pepper spray—favor finding a constitutional violation. Pepper spray "is designed to disable a suspect without causing permanent physical injury. Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle. . . ." *Vinyard,* 311 F.3d at 1348 (internal quotation marks and citations omitted). Any injuries or discomfort [Plaintiff] suffered as a necessary result of a dose of pepper spray were neither substantial nor long lasting.

*Danley*, 540 F.3d at 1307–08.

The fourth factor set forth in *Whitley*, which requires an assessment of "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them," 475 U.S. at 321, does not support a finding of a constitutional violation when applied to the use of force in this case. Specifically, Mines created a security risk by: (1) failing to comply with the several orders directed to him by Scott including disobeying the guard's orders he be handcuffed; (2) exhibiting an aggressive, combative, and insubordinate demeanor; (3) possessing a weapon; and (4) attempting to physically assault Scott. The court finds that the use of a chemical agent by Scott after Mines attempted to assault him constituted a reasonable response to the threat posed by Mines. Finally, the fifth *Whitley* factor, any effort made to temper the severity of the use of force, fails to implicate a violation of Mines' constitutional rights as the unrefuted evidence reflects Scott deployed only a short burst of pepper spray in an effort to gain control over Mines after which Mines complied with an order to be handcuffed. Correctional officials then escorted Mines for a medical examination and decontamination.

Upon examining the undisputed facts of this case in accordance with the relevant *Whitley* factors, the court finds Mines fails to demonstrate that any defendant used force maliciously and sadistically for the very purpose of causing him harm. Mines presents no evidence that the force used against him was disproportionate to the need to restore order and ensure compliance with orders and prison rules. Mines also does not dispute Defendants' evidence that during the incident in question he was verbally aggressive towards correctional personnel, he refused multiple orders to be handcuffed, that his overall demeanor was combative, unruly, and agitated, and that he attempted to assault Scott. When Mines attempted to assault Scott, the guard deployed a short burst of pepper spray to his face. *See Bennett v. Parker,* 898 F.2d 1530, 1533 (11th Cir. 1990)

(explaining that a prison guard may use force to maintain order and that a verbal altercation between an inmate and a guard can fall within the scope of maintaining order); *see Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (observing that "[p]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly, they are not required to do so where an inmate repeatedly fails to follow those orders.").

In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment. *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987). "[I]f force was applied in a good faith effort to maintain discipline, courts should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline.'" *McBride v. Rivers*, 170 F. App'x. 648, 656 (11th Cir. 2006) (quoting *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991)). While this deference "does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Ort*, 813 F.2d at 322 (quoting *Whitley*, 475 U.S. at 322). Where the only question concerns the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See Campbell*, 169 F.3d at 1374 (stating "force does not violate the Eighth Amendment merely because it is unreasonable or unnecessary"); *McBride*, 170 F. App'x. at 657 (observing that although correctional officers could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken maliciously and sadistically for the very purpose of causing harm.") (internal quotation marks and citations omitted).

Here, the force used to defuse Mines' aggressive and assaultive conduct was not for the purpose of causing harm, but for the purpose of regaining control, preventing any further escalation of the situation, and restoring prison safety and security. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) (stating that "[w]hen an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger."). The use of force was brief and ceased after Mines complied with orders to lie on the ground and be handcuffed. *See Whitley*, 475 U.S. 312 at 319 ("The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied . . . was unreasonable . . ."). Mines received a medical evaluation within minutes of the incident which revealed a few minor abrasions.

Viewing the evidence in the light most favorable to Mines, his allegations support no reliable inference that any defendant used force maliciously for the purpose of causing harm or engaged in a wanton infliction of pain. Rather, Defendants acted within the permissible range of deference and, based on this record, the court concludes the use of force was necessary to restore discipline, diffuse the threat of harm from Mines, and maintain prison security, and was not excessive under the circumstances. *Brown*, 813 F.2d at 1188 (explaining that prisoner's "evidence must go beyond a mere dispute over reasonableness of the force used and support a reliable inference of wantonness in the infliction of pain."). Because the evidence fails to establish Defendants used any force in excess of that which was necessary to restore control over Mines, Mines fails to meet his burden of demonstrating a constitutional violation. Accordingly, Defendants are entitled to qualified immunity on Mines' excessive force claim against them in their individual capacity.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 6 ) be GRANTED;

2. This case be DISMISSED with prejudice;

3. Judgment be ENTERED in favor of Defendants;

4. Costs be TAXED against Plaintiff.

It is further

ORDERED that **on or before February 4, 2020**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 21st day of January, 2020.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE